UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**FILED**

DEC 2 0 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-36-GWU

BARBARA KAY SEWELL,                                  PLAINTIFF,

VS:                        MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT,

INTRODUCTION

Barbara Sewell brought this action to obtain judicial review of an

unfavorable administrative decision on her application for Disability Insurance

Benefits.  The case is before the Court on cross-motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for

judicial analysis of benefit denial cases:

1.      Is the claimant currently engaged in substantial gainful activity? If
yes, the claimant is not disabled. If no, proceed to Step 2.  See 20 C.F.R.
404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or
mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not
disabled. See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
impairment(s) significantly limiting the claimant's physical or mental ability
to do basic work activities? If yes, proceed to step 4. If no, the claimant is
not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.      Can the claimant's severe impairment(s) be expected to result in
death or last for a continuous period of at least 12 months?  If yes,
proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R.
404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
impairments meeting or equaling in severity an impairment listed in 20
C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)?  If yes,

1

the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled.  If no, proceed to step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply.   Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. <u>Id</u>. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir.  1984); <u>King v. Heckler</u>, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. 404.1521, 416.921.   The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term.  Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985).   The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment,"  Landsaw v. Secretary of Health and Human Services,  803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a _prima facie case by proving that she or he is unable to return to this work.  Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved.  When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e).  It may often be required for the agency to consult a vocational specialist in such cases.  Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985).  Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe.  Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir.  1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary."   20   C.F.R.   404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b), 416.967(b).  A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

4

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual."  20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments."  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The Administrative Law Judge (ALJ) concluded that Sewell, a 51 year-old former office worker, nurse/nursing supervisor and purchasing agent with a high school equivalent education, suffered from impairments related to coronary artery disease (being status post angioplasty), hypertension, hyperlipidemia, peripheral coronary artery disease, chronic low back pain (being status post fusion surgery) and arthritis. (Tr. 19-20, 23). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 26). Since the claimant's past work as a purchasing agent could still be performed, she could not be considered totally disabled. (Tr. 26).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The ALJ found that Sewell was limited to light level work, restricted from a full range by such non-exertional restrictions as (1) an inability to more than

5

occasionally stoop, crawl, and climb ramps or stairs; (2) an inability to ever climb ladders, ropes or scaffolds; (3) a need to avoid exposure to extreme cold; (4) a need to avoid work around unprotected heights or moving machinery; and (5) a need to avoid exposure to fumes, odors, dust, gases, or poor ventilation. (Tr. 26). This finding is compatible with the opinion of Dr. Mark Carter, a examining consultant, who opined that the plaintiff would merely need to avoid "strenuous" activity. (Tr. 542). The ALJ's finding was consistent with the physical restrictions identified by Dr. Sudideb Mukherjee, a non-examining medical reviewer. (Tr. 548-555). More severe physical restrictions than those found by the ALJ were not identified by such treating and examining medical sources as Dr. Magdy El-Kalliny (Tr. 189-222, 448-461), the staff at Lifeline Home Healthcare (Tr. 329-420), Dr. Albert Blacky (Tr. 462-495), and the staff at Scott County Hospital (Tr. 496-500). These reports provide substantial evidence to support the administrative decision.

Dr. Larry Perry, Sewell's treating family physician, identified a number of extremely severe physical restrictions on a Residual Functional Capacity Questionnaire including no ability to ever work and sit, stand or walk. (Tr. 593-595). The ALJ concluded that, in essence, these restrictions would preclude the plaintiff from performing any work activity. (Tr. 24). The ALJ opined that this opinion was inconsistent with the plaintiff's acknowledged activities and own treatment record and, so, this opinion was rejected. (Tr. 24). The undersigned finds that this action was appropriate. Treatment records from the physician noted complaints of coronary artery disease, hypertension and anxiety, but did not cite objective medical data to support such severe limitations. (Tr. 501-537, 596-599). Significantly, neither Dr. El-Kalliny nor Dr. Blacky, the specialists who treated the plaintiff for her musculoskeletal and cardiovascular problems,

6

identified the existence of such severe physical limitations.  Therefore, the ALJ properly rejected as binding the opinion of Dr. Perry.

The ALJ properly determined that Sewell did not suffer from a "severe" mental impairment.  Psychologist Gary Maryman examined the plaintiff and diagnosed an anxiety disorder.  (Tr. 546).  However, the mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown.  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  Maryman indicated that the plaintiff would not be impaired in her ability to concentrate and persist on task for work activities and would be able to interact adequately with fellow workers, supervisors as well as the general public.  (Tr. 546).  Psychologists Lea Perritt (Tr. 563) and Jay Athy (Tr. 578) each reviewed the record and opined that the claimant did not suffer from a "severe" mental impairment.  No treating or examining source of record identified the existence of more severe specific mental limitations. Therefore, these reports support the administrative decision.

Sewell identified the requirements of the purchasing agent job in the Disability Report.  She indicated that that this position was light in exertion and required no more than four and one/half hours a day of walking, five hours a day of sitting, and no climbing or crawling.  (Tr. 78).  These job requirements appear compatible with the limitations found by the ALJ and determined to have been appropriate by the undersigned.  The Court further notes that the position of purchasing agent is listed in the Dictionary of Occupational Titles (DOT) at DOT number 162.157-038.  This section also does not indicate the existence of any job requirements for the position of purchasing agent which would be beyond the residual functional capacity found by the ALJ.  Therefore, the ALJ properly concluded that the claimant could return to her past work.

Sewell argues that the ALJ erred in finding that she could return to her

7

past relevant work without obtaining the testimony of a vocational expert. However, the testimony of a vocational expert would only be required if the ALJ had reached step 7 of the Garner test; at which point, a claimant's "severe" impairments have been found to preclude a to return to past relevant work and the individual has also also been found to have non-exertional limitations which preclude reliance upon the medical vocational guidelines. In the present action, the plaintiff was found not disabled at Step 6, because she could return to past relevant work. Sewell cites no authority indicating that the ALJ must rely upon the opinion of a vocational expert to determine that the past work can still be performed at Step 6. Therefore, the Court must reject the claimant's argument.

Sewell asserts that the ALJ erred in rejecting the opinion of Dr. Perry and argues that the ALJ had a duty to at least recontact the physician to clarify his opinion if it was deemed inadequate. The administrative regulations at 20 C.F.R. Section 404.1512(e(1) provide such a duty. However, the case law on this question is quite sparse and the Sixth Circuit Court of Appeals has indicated in the unpublished opinion of Littlepage v. Chater, 1998 U.S. Lexis 688 (6th Cir. 1998) that this duty is only triggered when it is apparent from the record that the treating source based his opinion on information that was not in the record before the ALJ. In the present action, there is no reason to believe that Dr. Perry based his opinion on information not in the current record. Therefore, the Court must reject the plaintiff's argument.

Sewell also asserts that the ALJ erred in failing to find that her condition met the requirements of Section 4.12B of the Listing of Impairments concerning peripheral vascular disease. The Court notes that Section 4.12B requires a claimant to demonstrate:

Intermittent claudication with marked impairments of peripheral

8

arterial circulation as determined by Doppler studies showing:
1. Resting ankle/brachial systolic blood pressure ratio of less than .50; or
2. Decrease in systolic blood pressure at the ankle on exercise of 50 percent or more of pre-exercise level at the ankle, and requiring 10 minutes or more to return to pre-exercise level.

The claimant cites a March, 2001 Doppler study revealing a left ankle-brachial index of .38 noted to be markedly abnormal. (Tr. 186). However, this March, 2001 study was performed some 10 months before the plaintiff's alleged onset date of January 10, 2002 (Tr. 51) and during a time frame when she was still actively employed as a purchasing agent (Tr. 77-78). Dr. Blacky, the plaintiff's treating cardiovascular specialist, specifically noted no significant claudication in May of 2001. (Tr. 474). In September of 2002, during the relevant time period, Dr. Blacky found no claudication. (Tr. 466). The plaintiff cites no treatment records pertinent to the relevant time period, documenting findings compatible with the Listing. Therefore, the Court finds that this Listing was not met.

Sewell asserts that the ALJ erred in failing to find that her condition equalled the requirements of Sections 1.04B or 1.04C of the Listing of Impairments concerning musculoskeletal impairments. No physician of record indicated that these Listing sections had been equalled. Therefore, the Court must reject the plaintiff's argument.

Sewell argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to

9

the alleged pain.

In the present action, Sewell was found to be suffering from a potentially painful condition. However, even if she could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. A chest x-ray in February of 2002 was unremarkable. (Tr. 191). An EKG revealed a normal sinus rhythm. (Tr. 191). A x-ray of the lumbar spine showed only post-operative changes. (Tr. 191). The plaintiff noted that his back pain was gone following surgery in March of 2002. (Tr. 451). Dr. El-Kalliny, her surgeon, indicated that the patient was doing well in April and May of 2002. (Tr. 448-449). A lumbar spine x-ray obtained in March of 2003 by Dr. Carter revealed no significant disc space narrowing, arthritic changes or bony deformity. (Tr. 541). Dr. Blacky reported that a Nuclear Myocardial Persantine Scan revealed no sign of ischemia in April of 2003. (Tr. 463). Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Sewell's pain complaints.

The Court notes that Sewell submitted additional medical records directly to the Appeals Council which were never seen by the ALJ. (Tr. 601-607). This action raises an issue concerning a remand for the taking of new evidence before the Commissioner. Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993). A court may order additional evidence be taken before the Commissioner, "...but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding..." 42 U.S.C. Section 405(g). The statute provides that a claimant must prove that the additional evidence is both "material" and that

10

"good cause" existed for its not having been submitted at an earlier proceeding. Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988).  In the present action, the plaintiff has failed to adduce arguments as to why such a remand would be required.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the __20__ day of December, 2006.

G. WIX UNTHANK
SENIOR JUDGE